EL PUEBLO DE PUERTO RICO, apelado, *v.* ALFREDO GONZÁLEZ POLIDURA, acusado-apelante.

*Número:* CR-86-48     *Resuelto:* 8 de mayo de 1987

*Alfredo González Polidura,* por derecho propio; *Rafael Ortiz Carrión, Procurador General, Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo; *Ivette Aponte Nogueras,* de la Sociedad para Asistencia Legal, presentó un Informe Especial solicitado por el Tribunal Supremo de Puerto Rico.

### SENTENCIA

El Sr. Alfredo González Polidura, acusado-apelante, fue hallado culpable por el delito de asesinato en primer grado y dos violaciones a la Ley de Armas. El proceso seguido contra

---

el apelante finalizó el 22 de abril de 1986. Ese mismo día, el apelante renunció al derecho que le concede la Regla 162 ([1]) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 162 y solicitó que se le dictara sentencia. Al acceder a la petición del apelante, el tribunal de instancia lo sentenció a cumplir 105 años de cárcel.

No conforme con el veredicto, el señor González Polidura presentó un escrito de apelación por derecho propio. Dicho escrito fue presentado ante el Tribunal Superior, Sala de Aguadilla (tribunal que dictó la sentencia), el 22 de mayo de 1986. Para esta fecha ya habían transcurrido treinta (30) días de haberse dictado la sentencia.

El Ministerio Público compareció oportunamente a solicitar la desestimación de la apelación porque alegaba que no se presentó el escrito de apelación dentro del término dispuesto en las Reglas de Procedimiento Criminal. ([2]) El apelante se

---

([1]) Dispone la Regla 162:

"El término 'sentencia' significa el pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone al acusado.

"El tribunal al tiempo de imponer sentencia deberá explicar verbalmente o por escrito las razones para la imposición de la sentencia.

"Cuando se pronunciare un fallo condenatorio en casos de delitos graves (*felonies*) el tribunal señalará una fecha para dictar sentencia que será, por lo menos, tres días después de dicho fallo. En casos de delitos menos graves (*misdemeanors*) el tribunal deberá dictar sentencia no más tarde del día siguiente al del fallo. En ningún caso se dictará sentencia antes de haber sido resuelta cualquier moción de nuevo juicio o moción para que no se dicte sentencia o antes de dar debida consideración al informe presentencia que se requiere de acuerdo a la Regla 162.1.

"Las reglas de evidencia no se aplicarán en la fase de sentencia, excepto lo concerniente a privilegios, según lo contenido en las Reglas 23 a 35 de las Reglas de Evidencia de Puerto Rico.—Enmendada en Julio 23, 1974, Núm. 172, Parte 2, p. 11, art. 1; Junio 4, 1980, Núm. 103, p. 354, sec. 1, ef. 9 meses después de Junio 4, 1980." (34 L.P.R.A. Ap. II, R. 162.)

([2]) Dispone la Regla 194:

"La apelación se formalizará presentando un escrito de apelación en la secretaría de la sala del tribunal que dictó la sentencia, dentro de los veinte (20) días siguientes a la fecha en que la sentencia fue dictada, pero si dentro del indicado período de veinte (20) días se presentare una moción de nuevo juicio fundada en las Reglas 188(e) y 192, el escrito de apelación

opuso a dicha solicitud de desestimación y alegó que "[e]n ningún momento ni el tribunal que lo juzgó ni persona alguna le advirtió de que [*sic*] tenía tan s[ó]lo veinte días para apelar".

A los fines de evaluar la situación jurisdiccional, con fecha de 26 de junio de 1986, emitimos resolución donde referimos el escrito de apelación del acusado apelante a la Sociedad para Asistencia Legal para que realizara la investigación correspondiente y nos sometiera un informe sobre lo alegado por el apelante.

La División de Apelaciones de la Sociedad para Asistencia Legal compareció en representación del apelante y nos informó lo siguiente:

(a) Ante el tribunal de instancia el apelante estuvo representado por el Lic. Héctor Grau Ortiz.

(b) El 22 de abril de 1986 el tribunal de instancia emitió un fallo de culpabilidad contra el apelante. Ese mismo día, el señor acusado a través de su abogado renunció a los términos de la Regla 162 de Procedimiento Criminal y solicitó que se le dictase sentencia.

(c) *De acuerdo al apelante*, él no fue orientado sobre los procedimientos apelativos ni sobre los términos estatutarios para radicar el mismo. Este manifestó que había renunciado al término para dictar sentencia porque iba a apelar su caso.

---

podrá presentarse dentro de los veinte (20) días siguientes a aquel en que se notificare al acusado la orden del tribunal denegando la moción de nuevo juicio.

"El apelante deberá radicar en o remitir por correo certificado copia del escrito de apelación a la Secretaría del Tribunal de Apelación dentro de las cuarenta y ocho (48) horas siguientes a la radicación del escrito en el tribunal sentenciador y deberá notificar al fiscal la presentación del escrito de apelación dentro del término para apelar. La notificación al fiscal se hará en la forma provista en estas reglas, salvo lo que se dispone en la regla siguiente.

"En el escrito de apelación se consignarán breve y concisamente los errores en que se fundamenta la misma.—Enmendada en Junio 23, 1978, Núm. 77, p. 269, art. 1, ef. 30 días después de Junio 23, 1978." (34 L.P.R.A. Ap. II, R. 194.)

De acuerdo con este informe, la División de Apelaciones nos manifestó que, "en ánimo de que se impart[iera] Justicia, [era] importante . . . determin[ar] si la falta de orientación legal lesionó el derecho del señor acusado a apelar el fallo condenatorio".

El 4 de septiembre de 1986 emitimos una orden en la que manifestamos:

> Se remite al Lcdo. Héctor Grau Ortiz, abogado del convicto en el tribunal de instancia, copia del informe rendido por la Sociedad para Asistencia Legal, para que . . . se exprese sobre el mismo y en particular sobre la alegación de que no orientó a su cliente sobre sus derechos, términos y requisitos procesales para la apelación.

El Lic. Héctor Grau Ortiz compareció oportunamente a contestar y cumplir con la anterior orden. En su moción informativa el licenciado Grau expone detalladamente su relación profesional con el apelante. En cuanto a la alegación de que no le notificó a su cliente los términos para apelar, el licenciado Grau alegó lo siguiente:

(a) Durante la celebración del juicio se mantuvo al cliente informado de la posibilidad de una convicción y que de recaer un fallo de culpabilidad, el recurso disponible sería el de apelación.

(b) Al explicarle al cliente lo que era el recurso de apelación, se le explicó que luego de un fallo o veredicto se tenían veinte (20) días para radicar el recurso de apelación.

(c) El 22 de abril de 1986, luego de que el tribunal emitiera fallo de culpabilidad, el cliente le manifestó que deseaba que se dictara sentencia en ese mismo momento, ya que él iba a apelar su caso.

(d) Luego de que el Tribunal dictara sentencia, alega el licenciado Grau que le explicó a los familiares del señor acusado lo relacionado a la apelación y los términos. De esto fue testigo el *Lic. Pedro Rodríguez Samalot*, abogado de Orlando Vilanova, coacusado por los mismos hechos.

(e) Alrededor del 28 de abril de 1986 (*seis días después de haberse dictado sentencia*), la esposa del aquí apelante fue a la oficina del licenciado Grau a recoger el expediente del caso de su esposo ya que se iba a preparar una apelación.

(f) Posteriormente, el *Lic. Jorge Lora Longoria* se comunicó con el licenciado Grau para inquirir de los hechos y la prueba del caso ya que los familiares del señor González Polidura lo habían contratado para la tramitación de una apelación. Luego de esto el licenciado Grau no supo nada más del caso del señor González.

Vista la moción anterior del licenciado Grau Ortiz, emitimos resolución el 16 de octubre de 1986, en la que ordenamos al Secretario de este Tribunal que refiera copia de la antedicha moción a los Lics. Pedro Rodríguez Samalot y Jorge Lora Longoria para que se expresaran sobre la misma.

El licenciado Rodríguez Samalot compareció por medio de una moción de 4 de noviembre de 1986, y nos informó lo siguiente:

a) Es cierto que el abogado suscribiente el día 22 de abril de 1986 y en horas de la tarde se encontraba junto al Lcdo. Héctor Grau Ortiz en los "premises" del Tribunal Superior de Puerto Rico, Sala de Aguadilla, en unión a los familiares del señor Alfredo González Polidura.

b) En relación al fallo de culpabilidad dictado por el Tribunal en relación al señor Alfredo González Polidura y a mi representado se renunció al término que concede la ley y se dictó Sentencia, luego que ambos abogados hablamos con nuestros respectivos clientes.

c) Mientras nos encontrábamos en los "premises" del Tribunal, como anteriormente había indicado, presencié cuando el Lcdo. Héctor Grau Ortiz hablaba con los familiares del señor González Polidura, su cliente, explicándoles las razones y el término de la apelación y que a partir de ese día hab[ía] veinte días para radicar el Escrito de Apelación. Por las expresiones de los familiares del convicto Alfredo González Polidura entendí de que [*sic*] ellos pasarían esa semana por la oficina del Lcdo. Héctor Grau Ortiz para saldar un di-

nero que le debían y en adición para discutir todos los pormenores de la apelación.

d) Posteriormente, y *dentro del término de apelación de los veinte días,* recibí una llamada telefónica del Lcdo. Jorge Lora Longoria indicándome que los familiares del señor Alfredo González Polidura lo habían ido a visitar para contratarlo para la referida apelación. El distinguido compañero Lora Longoria inclusive me preguntó en relación a los pormenores del procedimiento llevado a cabo y recuerdo haberle contestado de dichos pormenores e inclusive sobre la prueba de defensa presentada por el Lcdo. Héctor Grau Ortiz.

[e)] Luego de esa llamada telefónica del Lcdo. Lora Longoria no supe nada más sobre los trámites de la apelación del señor González Polidura hasta que recibí de este Honorable Tribunal la Resolución del 16 de octubre de 1986. (Énfasis suplido.)

Luego de esto, manifiesta el licenciado Rodríguez Samalot que:

Entiende que lo expuesto en la presente Moción cumple con lo requerido por este Honorable Tribunal en su Resolución del 16 de octubre de 1986 y que no hay nada más que añadir a lo aquí expresado.

Posteriormente compareció el licenciado Lora Longoria y en su escrito en cumplimiento de resolución nos informó lo siguiente:

2. Tal y como expone el Lcdo. Grau Ortiz, en una fecha *del mes de abril* de 1986, la cual no puedo establecer con precisión, me comuniqué con el compañero para inquirirle sobre los hechos y prueba desfilada en el caso que se llevó contra el señor González Polidura en el Tribunal Superior de Aguadilla.

3. La llamada fue motivada por la visita que la señora Ricarda Quiñones Maysonet, esposa del señor González Polidura, hiciera a mi oficina con el propósito de contratar mis servicios para la solicitud de apelación de su esposo.

.     .     .     .     .     .     .     .

5. En la ocasión antes referida la señora Quiñones Maysonet compareció a mi oficina con un cartapacio conteniendo [*sic*] varios documentos pertenecientes al caso de asesinato seguido contra su esposo en el Tribunal Superior de Aguadilla. Me informó que su esposo había sido declarado culpable y sentenciado a pena en exceso de cien años. [É]st[a] expresó su deseo de apelar dicha sentencia e informó que no había llegado a un acuerdo con el compañero Grau Ortiz, que fue el letrado que representó a su esposo ante el Tribunal Superior.

6. En esa ocasión le informé que yo no podía aceptar contratación alguna para apelar por falta de tiempo y porque actualmente me dedico casi enteramente a litigación civil. Ante las insistencias de la señora Quiñones Maysonet le añadí el hecho de que yo no conocía nada sobre el caso ni sobre la posible existencia de errores a señalarse en la solicitud de apelación. La señora Quiñones Maysonet insistió en que me comunicara con el Lcdo. Grau Ortiz y con el Lcdo. Pedro Rodríguez Samalot, abogado de un co-acusado, para inquirir sobre los pormenores del caso.

7. Por motivo de la insistencia de la señora Quiñones Maysonet me comuniqué con el compañero Grau Ortiz y éste me comentó, en términos generales, de la prueba que desfiló ante el Tribunal Superior y sobre sus impresiones sobre una posible apelación. No recuerdo con precisión si mi comunicación con el compañero Rodríguez Samalot fue ese mismo día o si éste luego contestó mi llamada, pero de todos modos, mi conversación con él también versó en términos generales de la prueba desfilada ante el Tribunal Superior y primordialmente sobre los señalamientos relacionados con su representación.

8. Conclu[i]da la conversación con el compañero Grau Ortiz, le reiteré a la señora Quiñones Maysonet, mi determinación de no poder aceptar el caso para apelación. Asimismo le informé de la posibilidad de acudir a la Sociedad para Asistencia Legal o de radicar escrito por derecho propio, en cuyo caso el Tribunal Supremo le asignaría un abogado, con toda probabilidad de la Sociedad antes mencionada. (Énfasis suplido.)

Luego de evaluadas las mociones informativas de los licenciados Grau Ortiz, Rodríguez Samalot y Lora Longoria, concluimos que el apelante fue debidamente orientado de su derecho a apelar la sentencia y del término que tenía para hacerlo, que tuvo tiempo y maneras para lograr presentarla a tiempo y que fuera evaluado el aspecto jurisdiccional; carecemos de jurisdicción para acoger la apelación. Por lo cual, se desestima el recurso de apelación.

Así lo pronunció, manda el Tribunal y certifica el Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Desconocemos si la prueba que presentara el Ministerio Fiscal ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla, demostró más allá de duda razonable que el aquí apelante cometió los hechos delictivos que se le imputaron. La sentencia que hoy emite el Tribunal *limitándose* a desestimar la apelación radicada por falta de jurisdicción prácticamente impide que alguna vez lo podamos así determinar.

Este Tribunal, como máximo exponente de la justicia en nuestra patria, tiene el deber *ineludible y continuo* de velar por que a cada una de las personas que conviven en la misma le sean garantizados al máximo todos los derechos que nuestro ordenamiento jurídico provee.

*Concurrimos* con la sentencia emitida por cuanto entendemos es jurídicamente correcto el dictamen del Tribunal desestimando el recurso de apelación interpuesto por falta de jurisdicción. *Disentimos* por razón de que el Tribunal, al *limitarse* a desestimar el recurso, no provee un "remedio justo" para

que el apelante pueda lograr que *compulsoriamente* sea "revisada" la sentencia que le condena a pasar el resto de su vida en una institución penal.

La *razón técnica* que sirve de base para la desestimación decretada por este Tribunal lo es que el escrito de apelación, *radicado por derecho propio*, fue presentado ante el foro de instancia fuera del término de veinte días que prescribe la Regla 194 de las Reglas de Procedimiento Criminal.

La sentencia emitida por el Tribunal pasa totalmente por alto la verdadera razón para que ello así haya ocurrido; esto es, que el apelante —no obstante haberle informado el día de la imposición de las sentencias al abogado que lo representó a nivel de instancia de su *deseo inequívoco* de apelar de las mismas— se encontró huérfano de representación legal al él y sus familiares no poder levantar el dinero suficiente para lograr que dicho abogado "continuara" representándolo en apelación, o, cuando menos, radicara en tiempo el correspondiente escrito de apelación.

Acciones como esas son las que desafortunadamente le dan un mal nombre y reputación a nuestra profesión. Las mismas posiblemente son las que sirvieron de base a las tristes palabras de aquel frustrado y amargado hombre de leyes a los efectos de que la justicia, *en ocasiones*, parece ser un can flaco que sólo muerde al descalzo.

Este Tribunal tiene el deber y obligación, al enfrentarse a ese tipo de situación, no sólo de actuar enérgicamente respecto al causante de la misma sino de tomar aquellas medidas necesarias y apropiadas en reivindicación de lo que es justo.

I

Del resumen que hace el Tribunal de los "informes" rendidos por los tres compañeros abogados que de una forma u otra intervinieron en el asunto que ocupa nuestra atención surge "evidencia" suficiente y elocuente de la cual se puede concluir:

A. que el apelante, el día que fue sentenciado, le expresó al abogado que lo representó durante el proceso celebrado —Lcdo. Héctor Grau Ortiz— su deseo claro e inequívoco de apelar para ante este Tribunal de las sentencias que le habían sido impuestas. Ese hecho lo admite el referido abogado.

B. que el licenciado Grau Ortiz, no obstante lo arriba expresado, no radicó escrito de apelación alguno; hecho igualmente admitido por dicho abogado.

C. que el licenciado Grau Ortiz, pasados seis días del acto de imposición de sentencia, le entregó el expediente del caso a los familiares del apelante —ya que éste se encontraba recluido en una institución penal— debido a que no pudieron llegar a un acuerdo respecto a los honorarios de abogado a pagarse por el trámite apelativo.

Ello así se puede razonablemente inferir de la "declaración" del Lcdo. Pedro Rodríguez Samalot quien informa que estuvo presente durante la conversación que dichos familiares sostuvieron con el licenciado Grau Ortiz el día de la imposición de las sentencias al apelante; conversación de la cual él entendió "que ellos [los familiares] pasarían esa semana por la oficina del Lcdo. Héctor Grau Ortiz *para saldar un dinero que le debían* y en adición *para discutir todos los pormenores* de la apelación". (Énfasis suplido.)

D. que el licenciado Grau Ortiz, no obstante haber entregado el expediente del caso a los familiares del apelante, nunca renunció formalmente ante el tribunal de instancia como abogado del mismo.

E. que los familiares del apelante intentaron —dentro del término de veinte días que dispone la citada Regla 194 de Procedimiento Criminal— contratar los servicios de, por lo menos, otro abogado en la práctica privada de la profesión para que se hiciera cargo de la representación del apelante a nivel apelativo, resultando infructuosas sus gestiones.

Resulta pertinente señalar, en adición, que un escrito de apelación —*por derecho propio y a manuscrito*— fue radicado

en la secretaría del tribunal de instancia, aparentemente por familiares del apelante, a los treinta días del día de la imposición de las sentencias al aquí apelante.

## II

Es de todos conocidos que los términos para apelar sentencias, sean penales o civiles, y para recurrir de sentencias dictadas en causas civiles, son fijados por ley para conferir jurisdicción al tribunal apelativo. Véanse: *Rodríguez* v. *Pueblo*, 3 D.P.R. 107 (1903); *Cabassa* v. *Bravo*, 21 D.P.R. 185 (1914); *In re Franceschi y López de Tord*, 44 D.P.R. 647 (1933); *S. Rosemblum Inc. y Hernández, Admor. Jud.*, 44 D.P.R. 790 (1933); *Rivera Bonilla, Ex Parte*, 53 D.P.R. 403 (1938); *Santiago* v. *Asamblea Municipal*, 57 D.P.R. 121 (1940); *González* v. *Jiménez*, 70 D.P.R. 165 (1949); *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194 (1958). Esto es, dichos términos son de carácter jurisdiccional, los cuales no pueden ser prorrogados. *Pueblo* v. *Miranda Colón*, 115 D.P.R. 511 (1984).

Conviene recordar, sin embargo, lo expresado por este Tribunal en *Sucn. Bravo* v. *Srio. de Hacienda*, 106 D.P.R. 672 (1978), a los efectos de que somos un "Tribunal de Justicia y aunque la Justicia se pinta ciega, como símbolo de su imparcialidad, *los Tribunales que la imparten, deben tener los ojos bien abiertos para impedir que ella se frustre*" por cuanto, cuando de hacer justicia se trata, "*no puede haber moldes técnicos que aprisionen los remedios justos*". (Énfasis suplido.) [1]

Si con el ánimo de impartir la mejor justicia de que humanamente somos capaces, hemos actuado de esa forma en el

---

[1] En el citado caso de *Sucn. Bravo* v. *Srio. de Hacienda*, 106 D.P.R. 672 (1978), permitimos que la demandante peticionaria —quien había dejado transcurrir el término jurisdiccional de treinta días para acudir en revisión ante este Tribunal de una sentencia civil dictada por el Tribunal Superior— "re-planteara" sus argumentos vía el inciso (6) de la Regla 49.2 de Procedimiento Civil.

campo de la litigación civil —donde, de ordinario, lo que está en controversia son derechos propietarios— ¿no debemos hacer lo indecible por encontrarle un "remedio justo" a una *situación meritoria* donde lo que está envuelto lo es, *nada más y nada menos que*, la vida y el futuro de un ser humano y su familia?

Somos del criterio que, *dados los hechos particulares del presente caso*, venimos *obligados* a así hacerlo. Como expresáramos anteriormente, es un hecho incuestionable que el apelante le manifestó a *su abogado* el deseo de apelar y que éste, por motivos extraños al juramento que tomó el día en que fue admitido a practicar su profesión, no cumplió con su deber, cuando menos, moral de radicar el escrito correspondiente de apelación en representación de su cliente.

La situación aquí planteada es un vivo ejemplo de una práctica —a nuestro juicio indeseable— que se ha venido desarrollando en los últimos años, según la cual un abogado contrata "por etapas" la representación legal que le provee al cliente en casos criminales; esto es, una suma de dinero por "atender" la vista preliminar, otra por la representación durante el acto del juicio, y una cantidad adicional por la apelación. Somos de la opinión que dicha práctica es una no sólo perjudicial para el cliente, sino que resulta nosciva a una eficiente administración de la justicia. Son innumerables las ocasiones, en que este Tribunal se ve en la obligación de asignar recursos de apelación a una recargada y agobiada Sociedad para Asistencia Legal por razón de que el abogado del acusado, una vez éste resulta convicto, "abandona" la representación legal del mismo ya que el "contrato de servicios no incluye representación a nivel apelativo".

Como parte de nuestro poder inherente de reglamentar la profesión, ya es tiempo que este Tribunal —en defensa de nuestra ciudadanía, del buen nombre y reputación de nuestra profesión y de una sana administración de la justicia— establezca la norma de que un abogado no puede abandonar la

causa del cliente que se comprometió a defender en casos criminales meramente por razón de que posteriormente surjan desacuerdos de índole monetaria entre ambos. En adición, es hora de que tomemos "cartas en el asunto" y prohibamos la práctica de que en casos criminales un abogado pueda contratar sus servicios profesionales "por etapas". *Cuando menos*, se le debe imponer la *obligación* al abogado que representa a un cliente a nivel de instancia *de radicar el escrito de apelación* si es que su cliente interesa hacer uso de ese derecho.

Comprendemos plenamente que un abogado, y su familia, precisamente viven de los honorarios que éste percibe por el trabajo que realiza y que la práctica de la profesión en nuestro país cada día se hace más difícil por razón de la competencia que existe. No podemos perder de vista, sin embargo, que no somos unos meros "comerciantes" del Derecho; somos, ante todo, abogados.

## III

Debe mantenerse bien presente lo expresado por este Tribunal en *Pueblo* v. *Serbiá*, 78 D.P.R. 788, 791–792 (1955), a los efectos de que si bien es cierto que en términos generales "el derecho de apelación no es un derecho constitucional en el sentido de no haber sido inclu[i]do específicamente como uno de los derechos inalienables dentro de la [C]onstitución", no es menos cierto que "tan pronto el derecho de apelación se incorpora a un sistema de justicia pública, por acción legislativa, *entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional*". (Énfasis suplido.) (²)

A nuestro juicio el "derecho cuasi-constitucional" de apelar para ante este Tribunal que tenía el aquí apelante *se vio*

---

(²) No debe olvidarse, sin embargo, que tratándose de un derecho que en "su origen" es estatutario, la Asamblea Legislativa tiene el derecho de prescribir *la forma* en que se ha de apelar; incluyendo, naturalmente, el término dentro del cual se ha de radicar el recurso.

*afectado de manera principal* por la actuación, cuando menos, negligente de su representante legal. Entendemos que el licenciado Grau Ortiz tenía la obligación ética y moral de, *por lo menos*, radicar el escrito de apelación en representación de su cliente. Él era el que lo había representado en el juicio; él era el que en mejor posición estaba de poder señalar los errores, si algunos, que habían sido cometidos por el juzgador de los hechos durante el proceso celebrado. El mero hecho de no poder llegar a un acuerdo económico con su cliente, y los familiares de éste, respecto a honorarios no lo relevaba de ese deber. Ello podía ser dilucidado posteriormente en otra acción. (³)

En vista de ello, somos del criterio que al igual que en *Sucn. Bravo v. Srio. de Hacienda*, ante, no debemos permitir que "moldes técnicos . . . aprisionen los remedios justos". Las disposiciones de la Regla 192.1 de las Reglas de Procedimiento Criminal nos proveen el vehículo para la concesión de ese "remedio justo". (⁴)

Consideraríamos, en su consecuencia, el escrito de apelación que radicara el apelante por derecho propio ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla, como una moción al amparo de la Regla 192.1 de Procedimiento Criminal y remitiríamos el caso a dicho foro con instrucciones para que *compulsoriamente* atienda y resuelva los planteamientos que —con sujeción a lo ocurrido en el presente caso— en derecho entienda procedente levantar la nueva representación

---

(³) *Cf. In re Feliciano*, 115 D.P.R. 172, 181 (1984).

(⁴) El informe rendido por la Comisión de lo Jurídico del Senado de Puerto Rico recomendando la aprobación de la citada Regla 192.1 contiene, entre otras, las siguientes expresiones:

"Al presente existen en nuestra jurisdicción varios recursos a través de los cuales se puede atacar la validez de una sentencia. Entre ellos el recurso de apelación, la moción para que se deje sin efecto la sentencia, el habeas corpus y el auto de *coram nobis*. La Regla 192.1 armoniza estos procedimientos proveyendo para una moción mediante la cual puedan someterse al Tribunal todos los elementos de juicio necesarios para que éste pueda determinar la validez de la convicción." 5 Servicio Legislativo de P.R. 592–593 (1967).

legal del apelante, esto es, la Sociedad para Asistencia Legal. ([5])

---

([5]) Como es sabido, hemos resuelto que un juez sentenciador no viene obligado a celebrar una vista para considerar una moción radicada por un convicto y sentenciado al amparo de las disposiciones de esta regla cuando dicha moción y los autos del caso concluyentemente demuestran que dicho convicto no tiene derecho a remedio alguno. *Camareno Maldonado* v. *Tribunal Superior*, 101 D.P.R. 552 (1973).

En el presente caso, con el propósito de proveerle al aquí apelante un "remedio justo", el tribunal de instancia *vendría obligado* a así hacerlo. *Ello, repetimos, en consideración a los hechos específicos del caso.*