EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RÓMULO SERBIÁ BONILLA, acusado y apelante.

Número 15701.

*Sometido:* 10 de noviembre de 1954. *Resuelto:* 10 de noviembre de 1955.

*Rafael V. Pérez Marchand* y *Santos P. Amadeo,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal Interino, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Este caso es una secuela del caso de *Pueblo* v. *Serbiá,* 75 D.P.R. 394, *(Snyder),* (1953). El acusado y apelante fué declarado culpable de un delito de asesinato en segundo grado por el jurado que entendió en su caso. De dicha sentencia apeló ante este Tribunal. Al apelar ante nos, no pudo hacer uso de la transcripción de la evidencia por haber fallecido el taquígrafo que tomó las incidencias del caso. El acusado y apelante, antes de perfeccionar su apelación, solicitó un nuevo juicio, alegando como fundamento, la muerte de dicho taquígrafo y la ilustrada Sala sentenciadora denegó dicha moción de nuevo juicio y ordenó que se procediera a preparar una exposición del caso, en substitución de la transcripción de la evidencia. La apelación se perfeccionó y la sentencia dictada fué confirmada por nosotros, *Pueblo* v. *Serbiá,* supra. Aunque el acusado y apelante en el primer caso señaló como error

la negativa de la ilustrada Sala sentenciadora, no pudimos pasar sobre ella, por no haberse apelado de la resolución declarando sin lugar la moción de nuevo juicio.

El acusado y apelante radicó posteriormente en la ilustrada Sala sentenciadora una moción solicitando "la anulación del proceso y sentencia y nuevo juicio", donde sustancialmente alegó: (*a*) que la legislación vigente "le garantiza al peticionario el derecho de apelar a base del récord taquigráfico"; (*b*) que es "indispensable y mandatorio que se tomen taquigráficamente las instrucciones que el Juez le da al jurado, ya que de acuerdo con la Ley del 30 de marzo de 1904, el Tribunal Supremo tiene poder para revisar las instrucciones que el juez sentenciador le da al jurado para determinar si se han cometido errores que han perjudicado los derechos sustanciales de los acusados aun cuando dichos errores no fueren señalados por los abogados en los alegatos presentados ante el Honorable Tribunal"; (*c*) que de no tomarse taquigráficamente las instrucciones que da el Juez al Jurado, procede que se le conceda un nuevo juicio al acusado; (*d*) que de no concedérsele un nuevo juicio al peticionario se le estaría privando a éste de su libertad sin el debido proceso de ley. La ilustrada Sala sentenciadora denegó la anterior moción y de dicha resolución, apela de nuevo ante nos el acusado y apelante señalando los siguientes errores:

"Primer error: la decisión del juez sentenciador privó al acusado de su libertad sin el debido proceso de Ley garantizado por las Enmiendas 5 y 14 de la Constitución de E. U. y el Artículo II sección VII de la Constitución del Estado Libre Asociado de Puerto Rico;

"Segundo error: la decisión del juez sentenciador está en conflicto con las decisiones del Tribunal Supremo de Puerto Rico que autoriza la concesión de un nuevo juicio cuando no se puede perfeccionar una apelación debido a la muerte del taquígrafo."

Ambos errores presentan, en realidad de derecho, una sola cuestión: si el hecho que haya muerto el taquígrafo que tomó

las declaraciones e incidencias de la vista, le da derecho al acusado y apelante a un nuevo juicio. Tal cuestión la resolvimos específicamente en el caso de *Pueblo* v. *Reyes*, 76 D.P.R. 296, (*Ortiz*), (1954), cita precisa a las págs. 300–301, donde resolvimos:

"En una opinión emitida por la Corte Suprema de California el 19 de mayo de 1950, en el caso de *People* v. *Chessman*, 35 Cal.2d 455, se resolvió que ni la muerte de un taquígrafo ni la imposibilidad de preparar una transcripción de evidencia pueden servir de fundamento para la concesión de una moción de nuevo juicio. Se resuelve que el artículo 1181 del Código Penal de California, que corresponde al 303 de nuestro Código de Enjuiciamiento Criminal, establece que una moción de nuevo juicio puede concederse solamente en virtud de los fundamentos enumerados en ese artículo, y que ni la muerte de un taquígrafo ni la imposibilidad de preparar la transcripción de evidencia están incluídos en los fundamentos señalados específicamente en tal artículo.

"La doctrina expuesta en los casos citados coincide con el peso de las autoridades en los Estados Unidos. 39 Am. Jur. 51; 66 C. J. S. 66, 67, 103. Ratificamos la tesis de que, en casos criminales, los fundamentos especificados en el artículo 303 son exclusivos y no pueden ser ampliados por las cortes, y que la alegación que le sirve de base a la moción de nuevo juicio en el caso de autos no es uno de los fundamentos enumerados en el artículo 303. Por lo tanto, actuó correctamente el tribunal a quo al declarar sin lugar la moción de nuevo juicio.

"No estamos de acuerdo con la tesis del apelante al efecto de que el resultado a que hemos llegado, o la doctrina que hemos adoptado, envuelve problema alguno de invalidez constitucional. La concesión de un nuevo juicio envuelve un privilegio concedido por la ley que puede ser restringido, reglamentado o modificado de acuerdo con los términos o condiciones que señale el legislador. 39 Am. Jur. 36. La alegada severidad o injusticia de la omisión de los fundamentos aquí envueltos como base para la concesión de un nuevo juicio es cuestión a ser resuelta por el legislador."

Generalmente el derecho de apelación no es un derecho constitucional en el sentido de no haber sido incluído específicamente como uno de los derechos inalienables dentro de la

constitución. Es cierto que tan pronto el derecho de apelación se incorpora a un sistema de justicia pública, por acción legislativa, entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional: *Frank* v. *Mangum*, 237 U.S. 309, 59 L. Ed. 969 (1915); *Cochran* v. *Kansas*, 316 U.S. 255, 86 L. Ed. 1453 (1942); *Denial of Appeal*, 19 A.L.R.2d 792, 795, 808, (1951) [Monografía]; *Boykin* v. *Huff*, 121 F.2d 865 (1941), pero no es menos cierto, que tratándose de un derecho que inicialmente es estatutario, la Legislatura tiene el derecho de prescribir la forma en que se ha de apelar. Por tanto, la Legislatura puede prescribir que se apele por medio de una transcripción de la evidencia, y en caso que no se pueda preparar dicha transcripción de la evidencia, que se apele mediante una exposición del caso, sin que dicha forma alternativa represente una violación del debido proceso de Ley.

Como cuestión de realidad, en este caso, el acusado y apelante tuvo una apelación suficiente, *Pueblo* v. *Serbiá*, supra. Ahora pretende otra nueva apelación, alegando que este Tribunal tiene facultad para revisar las instrucciones del Juez al jurado. Casualmente las instrucciones del Juez al jurado es una de las partes de la exposición alternativas del caso más susceptible de reproducción exacta. En su primera apelación, lo que el acusado planteó fué que el Juez no dió instrucciones de homicidio porque el Juez creyó que no había prueba suficiente que ameritara tal instrucción. No vemos cómo ahora podría, dentro del mismo caso, señalar otro error distinto.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Sifre y Pérez Pimentel concurren en el resultado.

---

Opinión concurrente del JUEZ ASOCIADO SR. NEGRÓN FERNÁNDEZ.

Las circunstancias presentes en este caso me llevan a concurrir con el resultado. Deseo, sin embargo, reservarme

juicio sobre la aplicabilidad de la doctrina del caso de *Pueblo* v. *Reyes*, 76 D.P.R. 296, citado en la opinión del Tribunal, a un caso en que las circunstancias demuestren lesión de derechos fundamentales de un acusado si, luego de haber éste optado por la transcripción de la evidencia—uno de los medios alternativos autorizados en primera instancia por la ley para perfeccionar la apelación— no puede aquella obtenerse por el fallecimiento del taquígrafo que actuó en el juicio, y se ve obligado el acusado a recurrir al medio que para tal eventualidad impone la ley—y que entonces resulta supletorio—de la exposición del caso.

No me parece que la concesión de un nuevo juicio en tales casos deba estar limitada a las causas, y al trámite, fijados en el estatuto, porque el derecho al nuevo juicio no surge entonces del permiso de la ley, sino del imperativo de la justicia. El derecho de apelación, si bien estatutario, debe ser protegido por el Estado—una vez se reconoce—para que sea eficaz, y en ese sentido su eficacia significa una oportunidad real para perfeccionar la apelación en forma adecuada; y un suceso fuera de su control, que le sitúe en desventaja, podría, en efecto, operar como negación del derecho, que el Estado le reconoce, de obtener una revisión adecuada de la sentencia con que el mismo Estado le priva de su libertad.