MANUEL REYES OYOLA, peticionario, *v.* GERARDO DELGADO, JEFE DE LA PENITENCIARÍA ESTATAL, demandado.

Número 876.

*Sometido:* 3 de junio de 1960.   *Resuelto:* 30 de junio de 1960.

938

*Santos P. Amadeo* y *G. Ortiz del Rivero,* abogados del peticionario; *Hon. Secretario de Justicia Hiram R. Cancio, Arturo Estrella, Secretario Auxiliar de Justicia* y *William Fred Santiago, Fiscal Interino, Tribunal Supremo,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El 3 de octubre de 1939, el Fiscal de la anterior Corte de Distrito de Humacao, presentó contra el peticionario y otras personas, cuatro acusaciones: tres por asesinato en primer grado y una por atentado a la vida. En la lectura de las acusaciones, el peticionario, asistido por su primer abogado, hizo alegación de inocente y solicitó juicio por separado. Señalada la vista del juicio para el 10 de noviembre de 1939, el peticionario, asistido por su segundo abogado, estuvo conforme que todas las acusaciones contra los tres acusados se vieran conjuntamente y ante el mismo jurado

La prueba de la defensa consistió exclusivamente en las declaraciones de los tres acusados. Los casos se sometieron sin informes y se estipuló por el Fiscal y el abogado de la defensa, que en las instrucciones al jurado se omitiera el resumen de la prueba que debe hacer el Juez. El jurado rindió un veredicto de culpabilidad contra cada uno de los tres acusados por tres delitos de asesinato en primer grado y un delito de atentado a la vida.

El 17 de noviembre de 1939, el peticionario, esta vez sin asistencia de abogado, compareció a recibir la sentencia y el Juez que había presidido el proceso y recibido el veredicto, lo condenó a cumplir tres sentencias de reclusión perpetua por los tres asesinatos y quince años de presidio por el atentado a la vida.

El día 7 de marzo de 1940, cuando ya el peticionario estaba recluido en presidio, por consejo de otro confinado, apeló directamente de esas sentencias ante este Tribunal, pero dichas apelaciones fueron desestimadas por no haberse notificado personalmente al Fiscal del Distrito los escritos de apelación.

En el 1952, el peticionario, esta vez asistido por su tercer abogado, radicó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, una petición de *hábeas corpus*, alegando la nulidad de las sentencias que le fueron impuestas el 17 de noviembre de 1939, por el fundamento que el peticionario no había tenido asistencia de abogado al momento de ser sentenciado, petición que fue declarada con lugar el día 3 de octubre de 1952, ordenándose por la Sala de San Juan se procediera a dictarle nuevas sentencias al peticionario con la debida asistencia de abogado.

Cuando el Tribunal Superior de Puerto Rico, Sala de Humacao, cita al peticionario para imponerle nuevas sentencias, éste, asistido por su tercer abogado, presenta una moción de nuevo juicio por el fundamento que habiendo falle-

cido el taquígrafo que tomó el proceso y no ser viable la preparación de una exposición del caso, no podría apelar de la sentencia que se le dictara. El 15 de febrero de 1953, la Sala de Humacao declaró sin lugar la moción de nuevo juicio por carecer de autoridad para actuar, al no estar incluida la muerte del taquígrafo que tomó el proceso, entre las causas para solicitar un nuevo juicio dispuestas por el art. 303 del Código de Enjuiciamiento Criminal de Puerto Rico. Esta resolución fue apelada ante nos y confirmada, por el mismo fundamento que adujo la Sala de Humacao: *Pueblo* v. *Reyes*, 76 D.P.R. 296 (Ortiz), (1954), cita precisa a la pág. 301.

En su nueva petición de *hábeas corpus* ante nos, el peticionario somete a nuestro estudio, las siguientes cuestiones: (1) si el peticionario tenía derecho a apelar de las nuevas sentencias por la Sala de Humacao, después de declarar sin lugar la moción de nuevo juicio; (2) si el hecho de no haber podido apelar lesiona su derecho constitucional a un debido proceso de ley; (3) si el derecho de apelar del acusado puede anularse por la imposibilidad de preparar la transcripción de la evidencia o por no ser viable la preparación de una exposición del caso; (4) si el método de apelar por medio de una exposición del caso le garantiza al acusado la total revisión sobre los méritos, (*full review*) concedida por nuestros estatutos criminales.

Es indudable que el efecto de la resolución de 3 de octubre de 1952 de la Sala de San Juan, declarando nulas las sentencias anteriormente dictadas y ordenando se dictaran nuevas sentencias, fue restablecer el estado procesal que existía al momento de aceptarse por la Sala de Humacao, los veredictos rendidos por el jurado, por ser formales y ajustarse a derecho. Además no se trataba en este caso de la simple corrección de un fallo, sino de una violación del debido proceso de ley que producía la nulidad de las primeras sentencias dictadas. Si esto era así, el peticionario tenía

derecho, antes que se dictaran las nuevas sentencias, a solicitar una moción de nuevo juicio por las razones dispuestas en el art. 303 de nuestro Código de Enjuiciamiento Criminal, y a apelar, después de dictadas las sentencias, tanto de la negativa a conceder un nuevo juicio, como de los méritos de las nuevas sentencias dictadas, de acuerdo con el art. 347 del mismo Código.

Lo que en realidad de derecho resolvimos en el caso de *Pueblo* v. *Reyes*, supra, fue, que la Sala de Humacao no tenía autoridad para conceder un nuevo juicio por el fundamento invocado por el peticionario, ya que la muerte del taquígrafo que tomó el proceso, no está incluida entre las causas de nuevo juicio dispuestas en el art. 303. Lo que ahora nos presenta el peticionario, es si la muerte del taquígrafo que tomó el proceso y la imposibilidad de preparar una exposición del caso, frustra en tal forma el derecho de apelar del peticionario, que equivalga a una negación del debido proceso de ley garantizado por nuestra Constitución. Esto nos obliga a determinar la posible naturaleza constitucional del derecho de apelación.

■■ En el caso de *Pueblo* v. *Serbiá*, 78 D.P.R. 788, (1955), cita precisa a las págs. 791 *in fine* y 792, nos enfrentamos a esta cuestión, por primera vez, expresándonos así: "Generalmente el derecho de apelación no es un derecho constitucional en el sentido de no haber sido incluido específicamente como uno de los derechos inalienables dentro de la constitución. Es cierto que tan pronto el derecho de apelación se incorpora a un sistema de justicia pública, por acción legislativa, entra a formar parte del debido proceso de ley y por lo tanto adquiere una categoría cuasi-constitucional: *Frank* v. *Mangum*, 237 U. S. 309, 59 L. ed. 969 (1915); *Cochran* v. *Kansas*, 316 U. S. 255, 86 L. ed. 1453 (1942); *Denial of Appeal*, 19 A.L.R.2d 792, 795, 808, (1951); [Monografía]; *Boykin* v. *Huff*, 121 F.2d 865, (1941); pero no es menos cierto que tratándose de un dere-

cho que inicialmente es estatutario, la Legislatura tiene el derecho de prescribir la forma en que se ha de apelar."

Nuestro pronunciamiento en el caso de *Serbiá*, lejos de haber sido modificado, ha sido reafirmado en casos posteriores de la Corte Suprema de Estados Unidos, en cuanto al extremo, que una vez se concede el derecho de apelar, entra a formar parte del debido proceso de ley: *Cole* v. *Arkansas*, 333 U. S. 196, 92 L. ed. 644 (Black), (1948), cita precisa a la pág. 201 U. S., 648 L. ed.; *Griffin* v. *Illinois*, 351 U. S. 12, 100 L. ed. 891 (Black, Warren, Douglas, Clark; Frankfurter, concurrente) (1956) cita precisa a las págs. 18 y 19 U. S., 898 y 899 L. ed.; *Eskridge* v. *Washington State Board*, 357 U. S. 214, 2 L. ed. 2d 1269 (Per Curiam), (1958), cita precisa a las págs. 215-216 U. S., 1271 L. ed.; *Dowd* v. *United States*, 340 U. S. 206, 95 L. ed. 215 (Black), (1951), cita precisa a las págs. 208-210 U. S., 218-219 L. ed. No se ha hecho distinción en cuanto a los casos en que la propia constitución estadual otorga el derecho de apelación y los casos en que tal derecho se concede por el estatuto.

Es indudable que, si en determinado caso, el procedimiento de apelación dispuesto por el estatuto e invocado debidamente por el acusado, resulta inadecuado o su aplicación uniforme puede ser dudosa, por condiciones económicas adversas, por incomunicación del apelante, etc., tal contrariedad constituye no sólo una negación del debido proceso de ley, sino también una negación de la igual protección de las leyes, transformándose la cuestión estatutaria en una cuestión constitucional. En tal caso, los tribunales deben examinar cuidadosamente todas las circunstancias del caso, no en sentido negativo sino con ánimo reparador, y tomar todas las medidas que sean necesarias para que el apelante obtenga la revisión objetiva sobre los méritos que se propone toda apelación: *Frank* v. *Mangum*, 237 U. S. 309, 59 L. ed. 969,

(Pitney) (1915), cita precisa a las págs. 327 U. S., 980 L. ed.; *Cochran* v. *Kansas*, 316 U. S. 255, 86 L. ed 1453 (Black), (1942), cita precisa a las págs. 256, 258 U. S., 1454, 1455 L. ed.; *Boykin* v. *Huff*, 121 F.2d 865 (Rutledge), (1941), cita precisa a la pág. 870; *Dowd* v. *United States*, supra, cita precisa a las págs. 209 U. S., 219 L. ed.; *Griffin* v. *Illinois*, supra, cita precisa a las págs. 17–19 U. S., 898, 899 L. ed.; *Eskridge* v. *Washington State Board*, supra, cita precisa a las págs. 215, 216 U. S., 1270, 1271 L. Ed.

La muerte del taquígrafo que tomó el proceso, aisladamente considerada, no constituye una razón constitucional suficiente para conceder un nuevo juicio, bien se alegue que el método alternado provisto no se prestaría para una revisión sobre los méritos o cualquier lesión al derecho de un juicio justo, si dicho método alternado de revisión existe, como es la exposición del caso dispuesta por nuestro Código de Enjuiciamiento Criminal. Cuando tampoco dicho método alternado pudiera utilizarse, y de esta situación no pueda responsabilizarse al acusado, formando parte el derecho de apelación una vez concedido del debido proceso de ley, los tribunales, como una cuestión constitucional y no como una cuestión estatutaria, deben conceder un nuevo juicio que permita la revisión posterior de la causa criminal en sus méritos: *Pueblo* v. *Reyes*, supra, distinguido y aclarado.

Es indudable, vistas las disposiciones del art. 480 de nuestro Código de Enjuiciamiento Criminal, 34 L.P.R.A. 363, sec. 1752 que le confiere poder expresamente a los tribunales de Puerto Rico, ante una solicitud de hábeas corpus, a decidir el asunto "como lo exija la justicia del caso", que los Jueces del Tribunal Superior de Puerto Rico y los Jueces de este Tribunal, tienen autoridad en ley para ordenar un nuevo juicio, fuera de las causas dispuestas por el art. 303 de nuestro Código de Enjuiciamiento Criminal, cuando la *justicia* del caso así lo requiera.

Examinadas las circunstancias del presente caso, a la luz de los principios antes enunciados, no es difícil concluir que el peticionario no tuvo en su apelación contra la negativa de su moción de nuevo juicio, esa oportunidad razonable que caracteriza el debido proceso de ley. No hay duda que el peticionario no tuvo la debida asistencia de abogado al momento de imponérsele las sentencias originales. Debido a este hecho, por el cual hay que responsabilizar al Estado, fue necesario, muchos años más tarde, anular dichas sentencias y ordenarle al Tribunal Superior de Puerto Rico, Sala de Humacao, que procediera a dictarle nuevas sentencias.

Cuando se dictan las nuevas sentencias no eran ya funcionarios de la Sala de Humacao, ni el Juez que presidió el proceso, ni el Fiscal del Distrito, ni el abogado de la defensa, ni el taquígrafo de sala y cualquier reconsideración sobre los méritos hubiera sido imposible. En cuanto al derecho de apelación se refiere, el taquígrafo que tomó el proceso había muerto y era imposible obtener una transcripción de la evidencia. En la secretaría de la sala no había notas ni documentos sobre los cuales hubiera podido prepararse una exposición del caso, como ante nos, ahora admiten las partes, después de las diligencias pertinentes. Siendo esto así, es innegable que el acusado no es responsable de la situación desventajosa creada por la muerte del taquígrafo y la imposibilidad de preparar una exposición del caso. Por el contrario, habría que responsabilizar al Estado por tal situación de hechos: *United States* v. *Randolph*, 259 F.2d 215, (Hastings), (1958), cita precisa a las págs. 217 *in fine* y 218; véase además el comentario sobre este caso en 72 Harv. L. Rev. 1166 (1959).

*Por las razones expuestas le concederemos un nuevo juicio.*

El Juez Presidente Sr. Negrón Fernández no intervino.

El Juez Asociado Sr. Saldaña disintió.