ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>JOSEPH RODRÍGUEZ COMAS<br><br>Apelante | KLAN202400166<br><br><br><br>CONS. | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Germán<br><br>Caso Núm.:<br>13CR20230060 al 0061<br><br>Sobre:<br>Art. 241 del C.P.<br>(2 CASOS) |
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>BENJAMÍN RODRÍGUEZ RAMOS<br><br>Apelante | KLAN202400167 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Germán<br><br>Caso Núm.:<br>13CR20230062 al 0063<br><br>Sobre:<br>Art. 177 del C.P.<br>(2 CASOS) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de septiembre de 2024.

**I.**

Tenemos ante nuestra consideración dos (2) apelaciones que fueron consolidadas debido a su intrínseca relación. En el recurso KLAN202400166, el señor Joseph Rodríguez Comas (señor Rodríguez Comas) solicitó que revoquemos una *Sentencia* dictada el 22 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Germán (TPI). Mediante esta, el TPI, luego de declarar culpable al señor Rodríguez Comas por dos cargos del delito de alteración a la paz, según tipificado en el Artículo 241 del Código Penal de Puerto Rico, Ley Núm. 146-2012, según enmendada, 33 LPRA sec. 5331, lo condenó a una pena de treinta (30) días de reclusión por cada caso. A su vez, le impuso el pago de una multa de mil dólares ($1,000.00) y una pena especial de cien dólares ($100.00) por cada caso.

Por otro lado, en el recurso KLAN202400167, el señor Benjamín Rodríguez Ramos (señor Rodríguez Ramos) peticionó que

revoquemos una *Sentencia* dictada en la misma fecha por el TPI. En esta, tras declarar culpable al señor Rodríguez Ramos por dos cargos por el delito de amenaza tipificado en el Artículo 177 del Código Penal, *supra*, sec. 5243, el Foro Primario lo sentenció a una pena de veinte (20) días de reclusión, conjunto con una multa de mil dólares ($1,000.00) y una pena especial de cien dólares ($100.00) por cada caso.

Con el beneficio de la comparecencia de todas las partes y por contar con la transcripción de la prueba oral (TPO), nos encontramos en posición de resolver.

Por los fundamentos que expondremos a continuación, se adelanta la confirmación de las *Sentencias* apeladas.

Veamos un resumen del tracto procesal que sostiene nuestra determinación.

## II.

Por hechos suscitados el 8 de julio de 2023 en el Municipio de Lajas, el Ministerio Público presentó dos (2) denuncias en contra del señor Rodríguez Comas por violación al Artículo 241 del Código Penal, *supra*, sec. 5331 (alteración a la paz). Se alegó que el señor Rodríguez Comas, ilegal, voluntaria, maliciosa, a sabiendas y criminalmente se dirigió con palabras soeces hacia la Sra. Madeline Rodríguez Cruz (señora Rodríguez Cruz), a quien le reprochó que él se pasaba la resolución del Tribunal y las querellas de la Policía de Puerto Rico "por el 'bicho' y por el 'culo', que no le importa[ba] un 'carajo' lo que di[jera] la jueza". A su vez, que ofendió al Sr. Elías Ramos Feliciano (señor Ramos Feliciano), al gritarle "que no le importaba un 'carajo' lo que le di[jera,] [que era] un 'afrentao' y un 'mama bicho'".

Además, el Ministerio Público presentó dos (2) denuncias contra el señor Rodríguez Ramos por infringir el Artículo 177 del

Código Penal, *supra*, sec. 5243 (amenazas). Se alegó que allá para el 8 de julio de 2023, en Lajas, Puerto Rico, el señor Rodríguez Ramos, ilegal, voluntaria, maliciosa, a sabiendas y con la intención criminal, desde el balcón de su residencia, le gritó al señor Ramos Feliciano y a la señora Rodríguez Cruz que, si algo le ocurría a su esposa, los iba a matar. Se adujo que el señor Ramos Feliciano y a la señora Rodríguez Cruz sintieron intimidación y temor por su seguridad.

Tras varias incidencias procesales que resulta innecesario pormenorizar aquí, el 11 de enero de 2024 comenzó el juicio en su fondo, el cual culminó el 22 de febrero de 2024. Como prueba de cargo, el Ministerio Público ofreció el testimonio de la señora Rodríguez Cruz, el señor Ramos Feliciano y de la agente Alice Soto Pérez. A continuación, sintetizamos lo vertido por los testigos.

**Madeline Rodríguez Cruz**

La señora Rodríguez Cruz declaró que conocía al señor Rodríguez Comas desde hacía veinticinco (25) años y al Rodríguez Ramos hacía treinta y ocho (38) años.[1] Testificó que alrededor de las 12:15 p.m. del 8 de julio de 2023, se encontraba con su padre de crianza, el señor Ramos Feliciano, de paseo por Lajas para cambiar unos candados y fotografiar el terreno perteneciente a su padre.[2] Manifestó que sobre dicho terreno existía una disputa familiar, ya que el señor Rodríguez Ramos los había amenazado en dos (2) ocasiones previas.[3] Estableció que al llegar a los terrenos, cambió los candados y fotografió el área.[4] Expresó que el señor Rodríguez Comas llegó de forma brusca, arrogante y altanera y le manifestó "[q]ue los papeles del tribunal, que emitió la jueza en San Germán y las

---

[1] TPO del 11 de enero de 2024, pág. 8, líneas 2-26; pág. 9, líneas 1-9.
[2] *Íd.*, pág. 9, líneas 18-23; pág. 10, líneas 21-26.
[3] *Íd.*; pág. 18, líneas 10-13.
[4] *Íd.*, pág. 10, líneas 22-26; pág. 11, líneas 1-2. De las alegaciones de los apelantes contenidas en las notas de la agente Soto Pérez, admitidas como evidencia, surge que mientras la señora Rodríguez Cruz fotografiaba el área, el señor Ramos Feliciano le indicó al señor Rodríguez Comas "'canto cabrón', yo tiro las fotos que me dé la gana porque esto es mío". Véase *Alegato Apelante,* Anejo III, pág. 14.

querellas que le hagamos, pues se las pasa por el 'culo' y por el 'bicho', que él tenía dinero de más, que él pagaba lo que sea, que tenía tres edificios, que si me gustaría que fuera allá [a] Isabel[a], él con su gente a tirar fotos", por lo que se sintió ofendida.[5] La testigo precisó que el señor Rodríguez Comas se refirió a la orden judicial emitida por el TPI para que los apelantes no interfirieran con su padre ni con ella en el terreno.[6] Indicó que al escuchar esto, se sintió ofendida, ya que no llegó al lugar para alterar la paz.[7] Subrayó que el señor Rodríguez Ramos le gritó al señor Ramos Feliciano y a la testigo: "[l]os voy a matar si algo le pasa a mi esposa", quien se encontraba alterada por su visita.[8] Señaló que al sentir miedo y temor por su vida, se marchó hacia el Cuartel de la Policía en Lajas, donde se entrevistó con la agente Soto Pérez.[9]

**Elías Ramos Feliciano**

El señor Ramos Feliciano testificó que era una persona mayor de ochenta y cuatro (84) años de edad, que padecía de problemas de audición. Atestó que conocía al señor Rodríguez Ramos desde hacía sesenta y cuatro (64) años por ser su excuñado y al señor Rodríguez Comas desde hacía cuatro (4) o cinco (5) años.[10] Expuso que a eso de las 12:15 p.m. del 8 de julio de 2023, viajó desde Isabela hacia el Sector Los Hornos del Barrio Costas de Lajas para cortar los candados colocados en su propiedad.[11] Declaró que en repetidas ocasiones había visitado los terrenos para eliminar los candados, pero que llamaban a la Policía, cuyos agentes no lo dejaban entrar.[12] Señaló que ha acudido al tribunal por problemas con el señor Rodríguez Ramos por el referido terreno perteneciente a los herederos

---

[5] *Íd.*, pág. 13, líneas 12-14; pág. 15, líneas 10-15.
[6] *Íd.*, pág. 16, líneas 13-18.
[7] *Íd.*, pág. 15, líneas 23-27.
[8] *Íd.*, pág. 20, líneas 17-26.
[9] *Íd.*, líneas 25-26; pág. 21, línea 8-27.
[10] TPO del 22 de febrero de 2024, pág. 7, líneas 1-10; pág. 10, líneas 6-13.
[11] *Íd.*, pág. 11, líneas 5-11; pág. 12, líneas 5-14; pág. 7-19.
[12] *Íd.*, pág. 29, líneas 7-19.

Rodríguez Ramos, de los cuales su difunta esposa formó parte.[13] Precisó que tras el fallecimiento de su esposa, heredó conjunto a sus hijos la porción de terreno que le pertenecía a la causante.[14] El testigo afirmó que a pesar de sentirse amenazado por el señor Rodríguez Ramos por los previos altercados que han tenido, continuó visitando su propiedad.[15] El señor Ramos Feliciano pronunció que podía entrar al terreno cuando le diera la gana, sea de día o de noche.[16] Especificó que el señor Rodríguez Ramos salió al balcón de su residencia, que estaba a una distancia de alrededor de quince (15) pies, para decirle a su hija que era una "'puta' y 'pilla'" y los amenazó con matarlos.[17] Por otro lado, aseveró que el señor Rodríguez Comas se acercó a su vehículo manoteando para proferir las palabras soeces de "viejo 'fregao', 'mama bicho' y 'cabrón'", e indicarle que no tenía nada que buscar en dichos terrenos.[18] Estableció que por lo anterior, radicó una querella en el Cuartel de la Policía en Lajas.[19]

**Alice Soto Pérez**

La agente Soto Pérez declaró que laboró en el Distrito de Lajas de la Policía de Puerto Rico.[20] Precisó que después de las 12:00 p.m. del 8 de julio de 2023, recibió una llamada de la señora Wanda Comas, hija del señor Rodríguez Ramos, para que acudiera al Barrio Los Hornos de Lajas, puesto que el señor Ramos Feliciano y la señora Rodríguez Cruz estaban fotografiando sus residencias.[21] Manifestó que luego de llegar al lugar y orientar a la señora Comas, recibió una llamada de un retén que le indicó que señora Rodríguez Cruz y el señor Ramos Feliciano se encontraban en el cuartel.[22] Subrayó que

---

[13] *Íd.*, pág. 12, líneas 17-22; pág. 23, líneas 8-22.
[14] *Íd.*, líneas 17-22.
[15] *Íd.*, pág. 25, líneas 6-25; pág. 26, líneas 2-24.
[16] *Íd.*, pág. 13, líneas 11-14.
[17] *Íd.*, pág. 14, líneas 17-23.
[18] *Íd.*, pág. 15, líneas 9-18.
[19] *Íd.*, pág. 17, líneas 11-15.
[20] *Íd.*, pág. 37, líneas 19-21.
[21] *Íd.*, pág. 38, líneas 11-20; pág. 57, líneas 7-21.
[22] *Íd.*, pág. 42, líneas 11-27.

la señora Rodríguez Cruz alegó que se encontraba tirando unas fotos desde el exterior de la residencia del señor Rodríguez Comas, quien se negó y le expresó "que a él no le importa[ba] los papeles de la policía ni de la jueza porque esos papeles se los pasa[ba] por el 'bicho' y por el 'culo' y que el señor Ramos Feliciano era un "'afrentao' y 'mama bicho'".[23] Además, atestiguó que, dado que la esposa del señor Rodríguez Ramos se sintió mal, este salió al balcón de su residencia y expresó que si algo le llegaba a ocurrir a su esposa, los iba a matar.[24] Relató que al entrevistar a los apelantes, el señor Rodríguez Comas adujo que al mencionar los papeles se refirió a que el señor Ramos Feliciano se pasaba los permisos de construcción que emitió la Administración de Reglamentos y Permisos por donde no le daba el sol.[25] Asimismo, que el señor Rodríguez Ramos arguyó que nunca le manifestó al señor Ramos Feliciano y a la señora Rodríguez Cruz que los iba a matar, sino que al ver a su esposa nerviosa, les gritó: "dejen la cosa ya, que si algo le va a pasar, si algo le llega a pasar a mi esposa ustedes las van a pagar, ustedes van a pagar las consecuencias".[26] Afirmó que existía inconsistencia entre las alegaciones de la señora Rodríguez Cruz y del señor Ramos Feliciano sobre el incidente con la versión de los apelantes.[27] Aun así, aseveró que su investigación estaba completa, por lo que decidió no entrevistar a la señora Olga Rodríguez Comas, a la señora Wanda Comas, al padre del señor Rodríguez Comas, ni a la pareja de la señora Rodríguez Cruz, quienes presenciaron el incidente.[28] La agente entendió que la señora Rodríguez Cruz y el señor Ramos Feliciano no le alteraron la paz a los apelantes al fotografiar el exterior de sus residencias, ya que al momento del incidente estos no

---

[23] *Íd.*, pág. 43, líneas 18-25; pág. 45, líneas 1-11.
[24] *Íd.*, pág. 45, líneas 18-27.
[25] *Íd.*, pág. 46, líneas 26-27; pág. 47, líneas 1-5.
[26] *Íd.*, pág. 47, líneas 8-13.
[27] *Íd.*, pág. 60, líneas 10-27.
[28] *Íd.*, pág. 61, líneas 2-27.

expresaron que se sintieron ofendidos por dicha acción.[29] No obstante, estableció que no entrevistó a los apelantes para el día del incidente, ya que la agente tenía compromisos personales, más que el señor Rodríguez Ramos y su esposa convalecían de COVID-19.[30] Reconoció que al entrevistar a los apelantes varias semanas después del incidente, le manifestaron que querían denunciar a la señora Rodríguez Cruz y al señor Ramos Feliciano.[31]

Tras culminar el desfile de prueba testifical y documental, el TPI emitió un fallo de culpabilidad contra los apelantes por todos los cargos imputados y los condenó a una pena de treinta (30) días de reclusión a cumplirse consecutivamente; una multa de mil dólares ($1,000.00), y una pena especial de cien dólares ($100.00) por cada caso. No obstante, tras la representación legal de los apelantes solicitar reconsideración, el Foro Primario redujo la pena de reclusión del señor Rodríguez Ramos a veinte (20) días por cada caso, considerando era un adulto mayor de ochenta y un (81) años de edad.

Inconformes, el 23 de febrero de 2024, los señores Rodríguez Comas y Rodríguez Ramos acudieron ante este tribunal mediante dos (2) recursos de apelación, en los que plantearon que el TPI incidió al cometer los siguientes errores:

> **1. EL CASO DE PUEBLO DE PUERTO RICO VS. JOSEPH RODR[Í]GUEZ COMAS ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE CUANDO LA PRUEBA DE CARGO NO ESTABLECIÓ SU CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE EN VIOLACI[Ó]N A LA PRESUNCIÓN DE INOCENCIA Y AL DEBIDO PROCESO DE LEY.**
>
> **2. ERRÓ EL HONORABLE TRIBUNAL AL DECLARAR AL APELANTE DE DELITO CONTEMPLADO EN EL ART. 241 DEL C[Ó]DIGO PENAL CUANDO DE LA MISMA PRUEBA DEL AGENTE DEL ORDEN PÚBLICO, ALICE SOTO, FUE DEFICIENTE POR LO QUE EL MINISTERIO PÚBLICO NO DEMOSTRÓ MÁS ALLÁ DE DUDA RAZONABLE.**

---

[29] *Íd.*, pág. 64, líneas 10-21; pág. 66, líneas 13-27.
[30] *Íd.*, pág. 46, líneas 13-27; pág. 69, líneas 10-11.
[31] *Íd.*, pág. 67, líneas 6-21.

**3. ERRÓ EL HONORABLE TRIBUNAL AL EXPEDIR UNA PENA DE CÁRCEL DE 30 DÍAS ADICIONAL A LA MULTA DE $1,000.00 CUANDO EL ACUSADO ES PRIMER OFENSOR ADEMÁS DE SER UNA PERSONA DE 25 AÑOS DE EDAD, PADRE DE FAMILIA Y COMERCIANTE. DEBIDO A LAS CIRCUNSTANCIAS PARTICULARES DEL CASO EXISTE ATENUANTES POR LO QUE DEBE SER CONSIDERADA LA PENA MÍNIMA.**

**4. PARA EL CASO DE PUEBLO DE PUERTO RICO VS[.] BENJAM[Í]N RODR[Í]GUEZ RAMOS, ERRÓ EL HONORABLE TRIBUNAL AL DECLARAR CULPABLE AL APELANTE DEL DELITO CONTEMPLADO EN EL ART. 177 DEL C[Ó]DIGO PENAL CUANDO LA PRUEBA DE CARGO NO ESTABLECIÓ QUE LA[S] AMENAZAS FUERAN PROPICIADAS Y MUCHO MENOS CREÍDAS. DESPRENDI[É]NDOSE QUE SE EMITIERON LAS EXPRESION[E]S SOBRE SUPUESTA AMENAZA NO CUMPLE CON EL CRITERIO DE ESPECIFICIDAD Y CREENCIA POR LA CAPACIDAD PARA INFRINGIR EL DAÑO.**

**5. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA IN[S]TANCIA AL DECLARAR CULPABLE AL APELANTE DEL DELITO CONTEMPLADO EN EL ART. 177 DEL C[Ó]DIGO PENAL CUANDO DE LA MISMA PRUEBA SURGE QUE LA INVESTIGACIÓN POR PARTE DE LA AGENTE DEL ORDEN P[Ú]BLICO FUE DEFICIENTE POR LO QUE EL MINISTERIO P[Ú]BLICO NO DEMOSTRÓ LA CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE.**

**6. ERRÓ EL HONORABLE TRIBUNAL AL EXPEDIR UNA PENA DE C[Á]RCEL DE 20 DÍAS ADICIONALES A LA MULTA DE [...] $1,000.00 CUANDO EL ACUSADO ES PRIMER OFENSOR ADEMÁS DE SER UNA PERSONA DE EDAD AVANZADA (80 AÑOS).**

**7. ERRÓ EL HONORABLE TRIBUNAL AL DECLARAR CULPABLE AL SR. BENJAMÍN RAMOS CUANDO SURGE DE LA PRUEBA PRESENTADA POR EL MINISTERIO PÚBLICO PRUEBA EXCULPATORIA (NOTAS DEL AGENTE).**

Simultáneamente, los apelantes, quienes se encontraban bajo la custodia del Departamento de Corrección, presentaron una *Urgente solicitud de fianza en apelación*. En estas, nos solicitaron ordenar sus excarcelaciones bajo la fianza en apelación, a tenor con la Regla 198 de Procedimiento Criminal, 34 LPRA Ap. II, R. 198.

En igual fecha, emitimos una *Resolución* en la que le concedimos a la Oficina del Procurador General hasta el lunes, 26 de febrero de 2024 para expresarse sobre lo solicitado por los apelantes.

En cumplimiento con lo ordenado, la Oficina del Procurador General se allanó a la solicitud de los señores Rodríguez Comas y Rodríguez Ramos.

Dicho día, emitimos una *Resolución* en la que ordenamos al TPI a que inmediatamente celebrara una vista para la fijación de una fianza en apelación y que acreditara el cumplimiento con lo dispuesto por este tribunal, a no más tardar el 27 de febrero de 2024.

Así las cosas, el TPI presentó una *Comparecencia especial*, en la que notificó que se les impuso a los apelantes una fianza nominal en cada cargo.

En atención a los errores planteados por los apelantes, procedemos a exponer la normativa jurídica atinente a este recurso.

**III.**

**A. Apelación criminal**

En nuestro ordenamiento jurídico, toda persona acusada tiene derecho a apelar cualquier sentencia penal que recaiga en su contra. *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023); *Pueblo v. Serbiá*, 78 DPR 788, 791-792 (1955). La apelación es un privilegio estatutario que adquirió un carácter cuasi-constitucional y forma parte del debido proceso de ley. *Pueblo v. Serbiá, supra*, pág. 792; *Pueblo v. Rivera Ortiz*, 209 DPR 402, 419 (2022); *Pueblo v. Esquilín Díaz*, 146 DPR 808, 815-816 (1998); *Pueblo v. Prieto Maysonet*, 103 DPR 102, 104 (1974). Una vez este Tribunal de Apelaciones adquiere jurisdicción, tenemos el deber de resolver el recurso de apelación en sus méritos. *Pueblo v. Colón Canales*, 152 DPR 284, 291 (2000). En tal sentido, los tribunales apelativos poseemos la facultad de examinar cualquier error de derecho cometido por el tribunal de instancia, así como cualquier asunto de hecho y derecho. *Pueblo v. Rivera Ortiz, supra*, págs. 421-422; *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002). Pues, como cuestión de derecho, la determinación de

probar la culpabilidad de una persona más allá de duda razonable es revisable, dado que la apreciación de la prueba es un asunto tanto de hecho como de derecho. *Pueblo v. Irizarry, supra*; *Pueblo v. Torres Medina, supra*; *Pueblo v. Rivero Lugo y Almodóvar*, 121 DPR 454, 473 (1988); *Pueblo v. Pagán Díaz*, 111 DPR 608, 621 (1981).

Al evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, es norma trillada que el juzgador de los hechos está en mejor posición para apreciar y aquilatar la prueba presentada. *Pueblo v. Casillas, Torres*, 190 DPR 398, 416 (2014). Por ello, la apreciación de la prueba del juzgador de los hechos merece gran respeto y deferencia por parte de un foro apelativo. *Íd.* Así las cosas, los tribunales apelativos solamente intervendremos con la apreciación de la prueba cuando se demuestre existencia de pasión, prejuicio, parcialidad o error manifiesto. *Íd.* pág. 417; *Pueblo v. Rivera Ortiz, supra*, pág. 422; *Pueblo v. Irizarry, supra*, págs. 788-789. Además, intervendremos cuando surjan serias dudas, razonables y fundadas sobre la culpabilidad de la persona acusada. *Pueblo v. Casillas, Torres, supra*; *Pueblo v. Irizarry, supra*, pág. 789. En este sentido, "si de un análisis ponderado de la prueba desfilada ante el foro primario surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio". *Pueblo v. Casillas, Torres, supra*.

Cuando un acusado presenta un recurso de apelación en el que plantea como error insuficiencia de la prueba, así como errores de derecho, los foros apelativos realizaremos un escrutinio de dos (2) partes. *Pueblo v. Ortiz Colón*, 207 DPR 100, 125 (2021). En primer lugar, evaluaremos la alegación de insuficiencia de prueba que, de ser meritoria, procede absolver al acusado. *Íd.* Ahora bien, si el

reclamo de insuficiencia de la prueba resulta inmeritorio, procede atender los errores de derecho. *Íd.*

### B. Amenaza

El Artículo 177 del Código Penal, *supra*, sec. 5243, tipifica el delito menos grave de amenaza. Incurre en este delito todo individuo que amenace a una o varias personas con causar un daño determinado a su persona o a su familia, integridad corporal, derechos, honor o patrimonio. *Íd.* Los elementos del tipo son "una manifestación previa expresa de voluntad, verbal o escrita, de causar un daño determinado a alguna persona determinada o a su familia y una apariencia de peligro e intranquilidad para el destinatario de la amenaza o quien la escucha". D. Nevares-Muñiz, *Código Penal de Puerto Rico Comentado*, Ed. Instituto para el Desarrollo del Derecho, Inc., San Juan, 2019, pág. 281. El delito se consuma una vez se profiere una amenaza que llegue al conocimiento del destinatario o de un familiar suyo y la persona amenazada sienta aprehensión o temor. *Íd.* Cabe precisar, que el daño con que se amenace debe ser específico y determinado. D. Nevares-Muñiz, *Código Penal de Puerto Rico Comentado*, Ed. Instituto para el Desarrollo del Derecho, Inc., San Juan, 2012, pág. 258. Además, "si la persona no tiene capacidad para infligir el daño, no estamos propiamente ante una amenaza pues el destinatario de la misma no va a sentirse amenazado". *Íd.*

### C. Alteración a la paz

De conformidad con el Artículo 241 del Código Penal, *supra*, sec. 5331, incurre en el delito menos grave de alteración a la paz, toda persona que realice cualquiera de los siguientes actos:

> (a) perturbe la paz o tranquilidad de una o varias personas con conducta ofensiva que afecte el derecho a la intimidad en su hogar, o en cualquier otro lugar donde tenga una expectativa razonable de intimidad;

> (b) perturbe la paz o tranquilidad de una o varias personas mediante palabras o expresiones ofensivas o insultantes al proferirlas en un lugar donde quien las oye tiene una expectativa razonable de intimidad; o

**(c) perturbe la paz o tranquilidad de una o varias personas en forma estrepitosa o inconveniente mediante vituperios, oprobios, desafíos, provocaciones, palabras insultantes o actos que puedan provocar una reacción violenta o airada en quien las escucha.** (Énfasis nuestro).

La modalidad del delito de alteración a la paz tipificada en el inciso (c) está dirigida a penalizar las expresiones que pueden ocasionar una reacción violenta en la persona que la escucha, concretamente los vituperios, oprobios, desafíos, provocaciones o palabras insultantes u ofensivas. *Pueblo v. García Colón I*, 182 DPR 129, 146 (2011). El Estado regula estrictamente el contenido de la expresión, específicamente las palabras de riña. *Íd.*, pág. 157. Al evaluar si unas expresiones constituyen palabras de riña, los tribunales debemos analizar si son una palabras hirientes e irritantes, capaces de causar una reacción violenta inmediata en un destinatario de inteligencia común. *Íd.*, pág. 152; *Pueblo v. Caro González*, 110 DPR 518, 530 (1980). Ahora bien, para que se puedan considerar delictivas, no es suficiente que las palabras o vituperios tengan el carácter de molestia. *Pueblo v. Rodríguez Lugo*, 156 DPR 42, 52 (2002); *Pueblo v. Caro González, supra.* Asimismo, no basta que se exprese un lenguaje indecoroso o grosero, que se diga "embustera y vieja ridícula", ni que en una acalorada discusión una persona comente "tú no eres más que un 'huele bicho'". *Pueblo v. Rodríguez Lugo, supra*; *Pueblo v. Ruiz*, 29 DPR 74 (1921); *Pueblo v. Irizarry, supra*, págs. 799-800.

Para que una persona incurra en el delito de alteración a la paz, es un requisito indispensable que se demuestre que la paz o tranquilidad del destinatario efectivamente se alteró. *Pueblo v. Casillas Díaz*, 190 DPR 398, 425 (2014); *Pueblo v. De León Martínez*, 132 DPR 746 (1993). La paz es perturbada cuando se invade la sensación de seguridad y tranquilidad que toda persona siente al amparo de la protección de la ley. *Pueblo v. Rodríguez Lugo, supra*,

pág. 51. Para ello, el Ministerio Público tiene la responsabilidad de probar todos los elementos del delito de alteración a la paz más allá de duda razonable. *Pueblo v. Casillas Díaz, supra.* Es decir, debe demostrar el estado anímico del destinatario antes del incidente, ya que no se puede cometer el delito si no estaba en un estado de paz o tranquilidad previo al incidente. *Íd.*

### D. Imposición de la sentencia

El Artículo 64 del Código Penal, *supra,* sec. 5099, rige lo concerniente a la imposición de la sentencia. El referido artículo dispone que "**[e]n delitos menos graves, el tribunal seleccionará la pena a imponer entre multa no mayor de cinco mil (5,000) dólares, reclusión, restricción domiciliaria o servicios comunitarios hasta seis (6) meses o combinación**". *Íd.* (Énfasis nuestro). El referido artículo le otorga al Foro Primario la potestad de imponer penas combinadas o en sustitución a la reclusión, tomando en consideración las recomendaciones de informe pre-sentencia, los requisitos de cada tipo de pena, la gravedad del delito, sus consecuencias, la rehabilitación del actor de los hechos y la seguridad de la comunidad. D. Nevares-Muñiz, *Código Penal de Puerto Rico Comentado*, Ed. Instituto para el Desarrollo del Derecho, Inc., San Juan, 2015, pág. 110.

Asimismo, el Código Penal concede discreción a los jueces de desviarse de la pena fija para imponer cualquier pena que entienda pertinente dentro de los límites del delito. *Pueblo v. Santana Vélez,* 177 DPR 61, 73-74 (2009). Véase también la Exposición de Motivos de la Ley Núm. 246-2014. El aumento o la reducción de la pena puede fluctuar entre cero a veinticinco por ciento. D. Nevares-Muñiz, *op. cit.,* pág. 114-115. No obstante, dichas circunstancias atenuantes o agravantes deben probarse previo a la imposición de la sentencia. Véase Regla 162.4 de Procedimiento Criminal, *supra,* R. 162.4. En lo

concerniente a las circunstancias atenuantes a la pena relacionadas con el actor de los hechos y la comisión del delito, se pueden considerar:

(a) Las causas de exclusión de responsabilidad penal cuando no concurran todos sus requisitos para eximir.
(b) El convicto no tiene antecedentes penales.
(c) El convicto observó buena conducta con anterioridad al hecho y goza de reputación satisfactoria en la comunidad.
(d) La temprana o avanzada edad del convicto.
(e) La condición mental y física del convicto.
(f) El convicto aceptó su responsabilidad en alguna de las etapas del proceso criminal.
(g) El convicto cooperó voluntariamente al esclarecimiento del delito cometido por él y por otros.
(h) El convicto restituyó a la víctima por el daño causado o disminuyó los efectos del daño ocasionado.
(i) El convicto trató de evitar el daño a la persona o a la propiedad.
(j) El convicto fue inducido por otros a participar en el incidente.
(k) El convicto realizó el hecho por causas o estímulos tan poderosos que le indujeron arrebato, obcecación u otro estado emocional similar.
(l) La participación del convicto no fue por sí sola determinante para ocasionar el daño o peligro que provocó el hecho.
(m) El daño causado a la víctima o propiedad fue mínimo.

A la luz de la normativa jurídica antes expuesta, procedemos a resolver las controversias ante nuestra consideración.

## IV.

En el presente caso, los señores Rodríguez Comas y Rodríguez Ramos plantearon que el Ministerio Público no probó su culpabilidad más allá de duda razonable por los delitos imputados. El señor Rodríguez Comas esbozó que no se probó que cometió el delito de alteración a la paz, ya que se de la prueba oral y documental surgió que las partes confrontaban situaciones previas que conllevaron que el señor Rodríguez Ramos solicitara auxilio del tribunal por perturbación de la paz en su hogar. Además, que de la prueba documental surgió que el señor Ramos Feliciano y la señora Rodríguez Cruz tenían un ánimo prevenido de visitar las residencias de los apelantes a alterar su paz al merodearlas, fotografiarlas, así como romper los candados. Asimismo, manifestó que expresar que se pasaba los papeles de la corte por el 'culo' y por el 'bicho' no

constituye un estándar de prueba suficiente para el delito de alteración a la paz, dado que están protegidas constitucionalmente, no son palabras de riña y no estaban dirigidas hacia el señor Ramos Feliciano y la señora Rodríguez Cruz.

El señor Rodríguez Ramos estableció que existía duda razonable sobre sus expresiones, toda vez que estaba preocupado por la salud emocional de su esposa cuando el señor Ramos Feliciano y la señora Rodríguez Cruz perturbaron la paz en su hogar al tomar fotografías. Además, expuso que los testimonios en cuanto a la amenaza eran contradictorios ya que el apelante alega que expresó que los destinatarios iban a pagar las consecuencias de lo que le ocurriera a su esposa, mientras que la señora Rodríguez Cruz adujo que el apelante les amenazó de muerte. Asimismo, esgrimió que el TPI abusó de su discreción judicial al imponer pena de prisión para un delito menos grave, ya que la jueza sentenciadora expresó "Yo no soy juez de pensar que los casos menos graves se satisfacen con multas". Sobre el particular, concretó que se le debían acreditar atenuantes por ser un adulto mayor de ochenta y un (81) años de edad con una salud comprometida por su condición de alta presión y que el día de los hechos tuvo COVID-19. Asimismo, que el señor Rodríguez Comas era un joven de veinticinco (25) años de edad, padre de familia, sin previo récord criminal.

Por su parte, la Oficina del Procurador General de Puerto Rico, en representación del Ministerio Público, se sustentó en que, luego de evaluar la prueba presentada y adjudicar total credibilidad a los testimonios, el TPI correctamente encontró culpable al señor Rodríguez Comas por dos (2) instancias del delito de alteración a la paz y al señor Rodríguez Ramos por dos (2) instancias de amenaza. Esto, al establecer que el señor Rodríguez Comas alteró la paz del señor Ramos Feliciano y de la señora Rodríguez Cruz con palabras

soeces y actos insultantes cuando visitaban unos terrenos cuya propiedad era compartida. Precisó que no constituyó una afrenta el hecho de fotografiar el área donde ubicaba la residencia recién construida del señor Rodríguez Comas, ya que el señor Ramos Feliciano y la señora Rodríguez Cruz actuaron dentro de los confines de una orden judicial que les daba acceso a los terrenos. A la vez, que el señor Rodríguez Ramos los amenazó con matarlos a todos, constituyendo un peligro para la familia del señor Ramos Feliciano y de la señora Rodríguez Cruz. Particularizó que la edad del señor Rodríguez Ramos no lo incapacita para infligir el daño que amenazó, por lo que los destinatarios creyeron que era capaz de hacer realidad su amenaza. Además, que el TPI creyó que el señor Ramos Feliciano y la señora Rodríguez Cruz fueron objetos de la amenaza.

La Oficina del Procurador General argumentó que, en los casos de delitos menos graves, el TPI tiene completa discreción para imponer sentencias combinadas de multa, reclusión, restricción domiciliaria o servicios comunitarios hasta seis (6) meses. Subrayó que, en este caso, el TPI actuó dentro de su discreción al considerar que la pena de cárcel era necesaria para enviar un mensaje disuasivo exigiendo respeto a la ley y a las órdenes del tribunal.

Tras evaluar los planteamientos de ambas partes, estamos en posición para analizar las alegaciones de insuficiencia de la prueba.

Del expediente surge que un Tribunal con jurisdicción sobre las partes autorizó al señor Ramos Feliciano y a la señora Rodríguez Cruz a acceder a los terrenos en controversia, pero que son utilizados por la familia Rodríguez Ramos. Así, el 8 de julio de 2023, los perjudicados visitaron dicho predio para romper los candados y fotografiar la construcción de la propiedad del señor Rodríguez Comas, arguyendo que fue sin la intención de alterar la paz de los apelantes. Ante ello, la señora Rodríguez Cruz y la agente Soto Pérez

declararon que el señor Rodríguez Comas se negó a que fotografiaran su hogar y se acercó al automóvil de los perjudicados a expresar que la orden judicial y las querellas ante la Policía de Puerto Rico se las pasaba por el 'culo' y el 'bicho'. Además, del testimonio del señor Ramos Feliciano y de la agente Soto Pérez surgió que el apelante le expresó al señor Ramos Feliciano que era un 'viejo fregao', un 'mama bicho' y un 'cabrón' que no tenía que buscar nada en dichos terrenos. Los perjudicados adujeron que se sintieron ofendidos, por lo que decidieron realizar una querella contra el apelante. Al analizar de forma sosegada y objetiva la totalidad del expediente ante nuestra consideración, concluimos que el Ministerio Público demostró más allá de duda razonable que el señor Rodríguez Comas cometió el delito de alteración a la paz contra el señor Ramos Feliciano y la señora Rodríguez Cruz. Cónsono con lo anterior, resolvemos que no erró el TPI al declarar culpable a los apelantes. Ello, toda vez que por medio del Artículo 241 (c) del Código Penal, *supra*, sec. 5331 sobre alteración a la paz, nuestro ordenamiento jurídico penaliza las expresiones que constituyen palabras de riña que son hirientes e irritantes, capaces de causar una reacción violenta e inmediata en el destinatario. Véase *Pueblo v. García Colón I, supra; Pueblo v. Caro González, supra*. Es un requisito indispensable que el Ministerio Público haya probado que la paz y la tranquilidad del destinatario se alteró, ya que, de lo contrario no se comete el delito. Ciertamente, las palabras proferidas por el señor Rodríguez Comas hacia los perjudicados constituyeron vituperios, oprobios, desafíos, provocaciones o palabras insultantes u ofensivas que eran capaces de causar una reacción violenta e inmediata en la persona que la escuchaba. El TPI, quien tuvo la oportunidad de aquilatar la prueba testifical, dio entera credibilidad a las alegaciones de que las palabras del señor Rodríguez Comas hicieron sentir ofendidos al señor Ramos

Feliciano y a la señora Rodríguez Cruz, quienes, alegaron visitar el terreno sin el objetivo de alterar la paz. Tal como estableció la Oficina del Procurador General, el hecho de que los perjudicados visitaran un terreno al que tenía acceso no constituyó una afrenta capaz de provocar la reacción violenta por parte del señor Rodríguez Comas.

Por otro lado, de la prueba aquilatada y creída por el TPI, surge que el señor Rodríguez Ramos le expresó al señor Ramos Feliciano y a la señora Rodríguez Cruz que si algo le llegase a ocurrir a su esposa, los mataba. Ante dicha expresión, los perjudicados señalaron que sintieron miedo y temor por su vida, por lo que realizaron una querella contra el señor Rodríguez Ramos. Estos hechos nos mueven a concluir que el TPI no incidió al declarar culpable al señor Rodríguez Ramos por el delito de amenaza según tipificado por el Artículo 177 del Código Penal, *supra*, sec. 5243. El Ministerio Público presentó prueba suficiente para probar más allá de duda razonable que el apelante amenazó al señor Ramos Feliciano y a la señora Rodríguez Cruz con causar un daño determinado a sus personas. El apelante realizó una manifestación verbal expresa de su voluntad de hacer daño con una amenaza de muerte, por lo que estos sintieron temor por sus vidas. El juzgador de los hechos les dio entera credibilidad a los testimonios de los perjudicados y de la agente Soto Pérez en que el señor Rodríguez Ramos aparentaba la capacidad para infligir el daño amenazado, por lo que su edad no constituyó un impedimento para que cometiera el delito imputado.

En virtud de todo lo anterior, reiteramos nuestra determinación en que la prueba de cargo fue suficiente en derecho para demostrar la culpabilidad de los señores Rodríguez Comas y Rodríguez Ramos por los delitos imputados, más allá de duda razonable. Así las cosas, resulta inmeritorio el reclamo de insuficiencia de la prueba esbozado por los apelantes. Establecido lo

anterior, procedemos a atender los errores de derecho que plantearon.

Los apelantes esgrimieron que el TPI incidió al imponer una pena de reclusión conjunto con una multa y al no considerar circunstancias atenuantes de la pena por sus edades, condiciones de salud y ser primeros ofensores. Como cuestión de umbral, resulta meritorio puntualizar que el Artículo 64 del Código Penal, *supra*, sec. 5099, faculta al juzgador para que, al momento de imponer una sentencia por un delito menos grave, seleccione entre multas menores de cinco mil dólares ($5,000.00), reclusión, restricción domiciliaria, servicios comunitarios hasta seis (6) meses o una combinación de estos. En el presente caso, el TPI le impuso al señor Rodríguez Comas una pena de treinta (30) días de reclusión, combinado con una multa de mil dólares ($1,000.00), y una pena especial de cien dólares ($100.00) por cada caso del delito menos grave de alteración a la paz. En lo referente al señor Rodríguez Ramos, el Foro Primario lo condenó a una pena de veinte (20) días de reclusión, combinado con una multa de mil dólares ($1,000.00), y una pena especial de cien dólares ($100.00) por cada caso del delito menos grave de amenaza. El TPI redujo la pena de reclusión del señor Rodríguez Ramos, considerando que era un adulto mayor de ochenta y un (81) años de edad. Así las cosas, tenemos que el TPI se circunscribió a los límites establecidos por el Código Penal al imponer las penas por los delitos por los cuales los apelantes fueron declarados culpables. Resulta importante destacar que el referido estatuto otorga discrecionalidad al juzgador para que combinar las penas y considerar las circunstancias atenuantes o agravantes. Por ello, el TPI no está obligado a automáticamente reducir la pena impuesta a los apelantes por presentarse circunstancias atenuantes. Ante todo lo anterior, no encontramos circunstancia alguna que nos

permita entrever que el TPI abusó de su discreción con la imposición de las penas de los señores Rodríguez Comas y Rodríguez Ramos.[32]

**V.**

Por los fundamentos que anteceden, se confirman las sentencias emitidas por el TPI.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[32] Debe quedar claro, que en correcta práctica apelativa, y ante la inexistencia de un abuso de discreción o que se hayan pronunciado sentencias ilegales, no nos corresponde sustituir el criterio del TPI por el nuestro sobre cual debe ser la Sentencia en los casos que nos ocupan.